## CHAFFEE COUNTY FLUORSPAR CORPORATION v. ATHAN et al.

### No. 3590.

Circuit Court of Appeals
Tenth Circuit.

July 30, 1948.

Rehearing Denied Aug. 30, 1948.

Robert L. McDougal, of Denver, Colo., for appellant.

Anthony F. Zarlengo, of Denver, Colo., and C. E. Tate, of Champaign, Ill., for appellees.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

On May 3, 1947, the appellant, Chaffee County Fluorspar Corporation, filed in its pending bankruptcy proceedings this petition for an arrangement of its unsecured debts under Chapter XI of the Bankruptcy Act, 52 Stat. 905, 907, § 321, Title 11 U.S. C.A. §§ 701, 721. The accompanying schedule, as amended May 23, 1947, listed unpaid taxes in the sum of $3,915.80, secured claims in the aggregate of $55,538.43, and unsecured claims in the amount of $69,137.-24, or total liabilities of $128,591.47. The only assets of the corporation listed were a note in the amount of $140,000, secured by a deed of trust on certain mining property located in Chaffee County, Colorado, formerly owned by the Company, and $8 on deposit in the bank. The proposed ar-

rangement contemplated the payment of 12½% of the allowed claims within 90 days after the acceptance of the plan by 50% or more of the creditors and approval by the court, and 12½% each 90 days thereafter until the entire indebtedness of the corporation was satisfied. When the petition under Chapter XI was filed, the appellant had already been adjudged a bankrupt, and the referee had stayed a sheriff's deed to a judgment creditor covering the mining property secured by the $140,000 note.

After analyzing the financial condition of the debtor as shown in the schedule and a report of the receiver, the referee concluded that no plan could be presented which would be fair, equitable and feasible under Chapter XI. He also expressed doubt whether relief could be granted under the broader provisions of Chapter X, or for that matter, whether upon liquidation there would be anything for the unsecured creditors. He accordingly dismissed the arrangement proceedings, revived the ordinary bankruptcy proceedings, and continued the order restraining the effective date of the sheriff's deed, in order that the court and trustee could proceed to liquidate the estate in the ordinary bankruptcy proceedings. The trial court approved the order of the referee, and entered judgment accordingly.

The secured debts listed in the schedule consisted of the judgment for $24,569.84, in satisfaction of which the sheriff had levied and sold the Corporation's mining property, and was prevented from issuing the sheriff's deed by the restraining order of the bankruptcy court; another judgment for $10,740.92 on which a levy had been made; a judgment and levy for $2,-227.67; a note and deed of trust for $9,-000; a note and deed of trust on which $7,000 was due; and a note and chattel mortgage on the equipment for $5,500, with a balance due of $2,000. The receiver's report disclosed other unsatisfied judgments, obligations and entangling litigation directly affecting the mining property.

It was stated in the amended schedule that the debtor corporation conveyed its

mining property and equipment on August 3, 1945 to L. W. Roche, and on the same date Roche executed a deed of trust to secure the note for $140,000, and that the debtor holds this note as an asset; that on December 13, 1945, Roche conveyed the mining property and equipment to United States Fluorspar, Inc., and that such conveyance was recorded on January 7, 1946; that the execution purchaser took nothing by the sheriff's deed to the mining property issued August 31, 1946. It is alleged that Bancroft's previous statement in his petition for a stay of the sheriff's deed to the effect that the transfer of the property by Roche to United States Fluorspar, Inc. was in derogation of its creditors, was ill advised, erroneous and retracted.

The record shows that the judgment for $24,569.84 was obtained in the Colorado state court on February 21, 1945, before the mining property was conveyed to Roche on August 3, 1945. Although execution on the judgment did not issue until May 23, 1946, both Roche and United States Fluorspar, Inc. had actual or constructive notice of the judgment, and took the property subject thereto.

The only asset of the Company hangs by the thread of the stay order, for without it the sheriff's deed becomes effective and the note worthless. No arrangement for the satisfaction or extension of time of payment of the unsecured debts can be adopted or confirmed without determining the rank and priority of the secured indebtedness, and continuing the stay order until the debts are paid in accordance with "may, upon notice and for cause shown, enjoin the proposed arrangement. The court or stay until final decree any act or * * * continuation of any proceedings to enforce any lien upon the property of a debtor." 52 Stat. 907, § 314, 11 U.S.C.A. § 714. Since, however, only the rights of unsecured creditors of the debtor may be arranged, Securities & Exchange Commission v. United States Realty & Improvement Co., 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293, the court should not exercise its injunctive powers in a manner to alter the rights of the secured creditors of the debtor. See Collier on Bankruptcy, 14 Ed., Vol. 8, Sec. 3.22, p. 186. If adequate relief cannot be granted without affecting the rights of the secured creditors, the Bankruptcy Act has provided an adequate remedy in Chapter X and elsewhere in the Act. See Securities & Exchange Commission v. United States Realty & Improvement Co., supra; John Hancock Mutual Life Ins. Co. v. Casey, 1 Cir., 141 F.2d 104.

The major portion of the unsecured debts (approximately $50,000 of the $69,-137.24) listed and sought to be arranged were owing to Bancroft, the principal officer of the debtor corporation. It is shown that Bancroft and Wilson, officers of the debtor, were also interested in United States Fluorspar, Inc. Other circumstances justify the inference that the conveyances from the debtor to Roche, and from Roche to United States Fluorspar, Inc. for the note and deed of trust, were intended to avoid and forestall the enforcement of the rights of the secured creditors. When the entire proceedings is viewed in its true light, it becomes manifestly plain that the trial court properly exercised its equitable discretion to dismiss the proceedings on the grounds that the proposed arrangements were not fair, equitable and feasible.

The judgment is affirmed.