Richard Francis HALLENBECK and Gertrude D. Hallenbeck, Appellants,

v.

PENN MUTUAL LIFE INSURANCE COMPANY, Appellee.

No. 8955.

United States Court of Appeals Fourth Circuit.

Argued June 11, 1963.

Decided Oct. 3, 1963.

Edwin M. Young, Roanoke, Va., for appellants.

Wilbur L. Hazlegrove, Roanoke, Va. (Hazlegrove, Shackelford & Carr, Roanoke, Va., on brief), for appellee.

Before BOREMAN and BRYAN, Circuit Judges, and WINTER, District Judge.

BOREMAN, Circuit Judge.

This appeal is from the November 28, 1962, order of the District Court of the United States for the Western District of Virginia directing the Referee in Bankruptcy to dissolve an injunction restraining The Penn Mutual Life Insurance Company, hereinafter called Penn Mutual, from foreclosing the lien of a deed of trust on real estate owned by debtors Richard and Gertrude Hallenbeck, husband and wife, as tenants by the entireties. Penn Mutual is the assignee of a negotiable promissory note secured by the above-mentioned deed of trust.

This deed of trust provides for monthly payments including principal and interest of $61.66 and additional amounts to be held in an escrow account to cover taxes and insurance, or total monthly payments of $74.00 or $75.00; further, in the event of default in said payments the holder of the note shall have the right to declare the entire unpaid balance of the secured indebtedness due and payable and cause the trustees thereunder to sell the real estate to satisfy the debt. The debtors, Hallenbecks, defaulted in the payment of three consecutive monthly installments and, on or about February 26, 1962, Penn Mutual exercised its right of acceleration and instructed the trustees to proceed to sell the property pursuant to the terms of the deed of trust.

However, on January 26, 1962, Richard Hallenbeck had filed his petition and schedules for a wage earner's plan under the provisions of Chapter XIII of the Bankruptcy Act; and the plan or arrangement for the payment of his debts, as thereafter confirmed by the Referee, provided for monthly payments of

$150.00 to the trustee appointed by the Referee, from which fund the trustee was to pay $75.00 each month to Penn Mutual's agent, with the further provision that, for the first several months and before payments to other creditors, the trustee should apply the whole of the $150.00 as payments to the secured debt until the defaults were satisfied and thereafter to apply $74.00 a month to each current installment due on said debt. Neither Penn Mutual nor its agent participated in the meeting of creditors and neither accepted the plan as thus confirmed, their intention being to proceed with the proposed foreclosure.

Upon petition by Richard Hallenbeck, the Referee entered an order enjoining Penn Mutual's proposed foreclosure until the further order of the court, conditioning continuation of the injunction upon the debtor's substantial compliance with the confirmed wage earner's plan. Penn Mutual excepted to the ruling of the Referee and, upon petition to the District Court for review of the Referee's order, that court reversed and remanded the case to the Referee with directions that the injunction be terminated. While expressing some uncertainty as to the authority of the bankruptcy court, in any event, to enjoin such foreclosure proceedings, the District Court concluded that the injunction was improper because the property covered by the deed of trust was owned by the debtor and his wife as tenants by the entireties and the latter was not a party to the proceeding. In re Hallenbeck, D.C., 209 F.Supp. 263 (Oct. 1962).

Thereafter, Gertrude Hallenbeck, representing herself to be a wage earner, filed her petition and schedules for a plan under Chapter XIII of the Act. The two Chapter XIII proceedings were consolidated and a joint plan for the two debtors, substantially similar to the original plan of the husband, was confirmed by the Referee. The debtor, Richard Hallenbeck, thereafter moved the District Court, under the provisions of Rule 60, F.R.Civ.P., to set aside its former order directing that the injunction be dissolved and to enter, in lieu thereof, an order enjoining foreclosure. The District Court, however, denied Hallenbeck's motion and on November 28, 1962, entered an order again remanding the case to the Referee with directions that the injunction be terminated. In re Hallenbeck, D.C., 211 F.Supp. 604 (Nov. 27, 1962). It is from this order that the Hallenbecks have appealed.

In its second written opinion last above cited, the District Court held as a matter of law that a court of bankruptcy, in the exercise of jurisdiction conferred by Chapter XIII, has no power to enjoin the foreclosure of a deed of trust or mortgage on real estate in view of the provision of Section 606 of the Act, 11 U.S. C.A. § 1006, which specifically excludes from the definition of "claims" cognizable under Chapter XIII any claims secured by estates in real property, and defines "creditors" as those holding "claims."[1] The court reasoned that since the word "claims" within the operation of Chapter XIII excludes claims secured by liens on real estate, the word "property," as used in Section 614 of the Act[2], empowering the bankruptcy court in Chapter XIII proceedings to enjoin any proceeding to enforce any lien upon the "property" of the debtor, was not intended to include real estate. We think that this holding of the District Court constituted error. There was no finding

1. Section 606 of the Act, 11 U.S.C.A. § 1006, 52 Stat. 930 (1938), as amended 73 Stat. 24 (1959), is as follows:

"§ 1006. In general

"For the purposes of this chapter, unless inconsistent with the context—

"(1) 'claims' shall include all claims of whatever character against the debtor or his property, whether or not provable as debts under section 103 of this title and whether secured or unsecured, liquidated or unliquidated, fixed or contingent, but shall not include claims secured by estates in real property or chattels real;

"(2) 'creditor' shall mean the holder of any claim; * * * *"

2. See footnote 6, infra.

of fact by the court respecting the exercise of discretion on the part of the Referee under the particular circumstances of the instant case.

As pointed out by the court below, the only prior decision directly in point, dealing specifically with such injunctive power under Chapter XIII in a case where a creditor held a debt secured by an estate in real property, is In re Garrett, 203 F.Supp. 459 (N.D.Ala. 1962). The District Court in its first opinion herein questioned the correctness of the Garrett decision, and in its second opinion unequivocally stated that Garrett had been erroneously decided.

In the Garrett case the debtor in a Chapter XIII proceeding owned a house and lot, subject to a mortgage. Prior to the first meeting of creditors, the Referee enjoined the mortgagee from proceeding with its proposed foreclosure, subject to the further orders of the court. The wage earner's plan, thereafter submitted and confirmed, provided for preferential status for the mortgagee who was to receive from the trustee a monthly payment in the same amount as required by the mortgage note. Garrett, the debtor, had tendered to the mortgagee the full amount of all arrearages at the time of confirmation of the plan, and there was a finding of fact by the Referee that Garrett owned an equity of redemption in the mortgaged property of substantial value above and beyond the balance due upon the mortgage debt. Further, upon petition by the mortgagee for review, it was found by the District Court that Garrett had faithfully made to the trustee the payments required by the plan, which payments were in the hands of the trustee and available to the mortgagee. The court there held that, in view of the provisions of Section 606 of the Act defining "claims" for the purpose of Chapter XIII to exclude claims secured by real property and defining a "creditor" as the holder of a "claim," the Referee erred in including the mortgagee in the debtor's plan and in requiring the mortgagee to participate therein as a method of payment of its debt, but the court further held that the issuance of the injunction was authorized by law and proper under the circumstances. It was ordered that the injunction be continued in effect but that the case be remanded to the Referee for modification of the debtor's plan so as to exclude the mortgagee from its provisions. The court in Garrett further provided that the injunction was, of course, limited to the period of the pendency of that case, and that during the effective period of the injunction nothing should be allowed to impair the security of the mortgagee.[3]

We find the reasoning of the Garrett case persuasive in the case before us. Although Penn Mutual is not a "creditor," cannot file a "claim" against debtors, and therefore may not be required to participate in the wage earner's plan,[4] it does not follow, as a matter of law, that the Referee erred in enjoining foreclosure. Jurisdiction to issue such an injunction is grounded independently and is not subject to the same restrictions as is the scope of the wage earner plan under Chapter XIII. Section 611 of the Bankruptcy Act (11 U.S.C.A. § 1011) provides for retention by the court of jurisdiction over any and all property of the debtor without any qualification whatever as to the

3. An interesting discussion by Asa S. Herzog, Referee in Bankruptcy, S.D.N.Y., of the decision in the Garrett case is found in 36 Ref.J. 108 (1962); and at 37 Ref.J. 50 (1963) the same author discusses the District Court's opinion herein.

4. In Garrett there was an attack by the creditor on the wage earner's plan itself, and the court there held that the inclusion of the creditor was error; however, in the instant case the validity of the plan in this particular is not attacked. This would seem to be a purely technical point, it making no substantial difference whether the payments are made to the creditor by the trustee under the plan or directly to the creditor by the debtor under the provisions of the injunction order.

character of the property.[5] Further, section 614 of the Bankruptcy Act (11 U.S.C.A. § 1014) specifically provides that, "upon notice and for cause shown," the court may enjoin or stay "any proceeding to enforce any lien upon the property of a debtor."[6] These provisions not only authorize, but require, that the court retain jurisdiction of any property, including, if such there be, an equity of redemption in real estate for the benefit of the estate of the debtor under Chapter XIII.

In In re Clevenger, 282 F.2d 756 (7th Cir., 1960), where a wage earner's plan under Chapter XIII assumed performance of the executory contracts of the debtor and contained the provision that "secured debts held by creditors who accept the plan shall have priority over the unsecured debts and shall be dealt with severally and will be paid as proved and allowed," and two creditors, each the holder of a conditional sales contract secured by an item of the debtor's personal property, refused to accept the plan and sought to recover their security by reclamation petitions, the court held that the Referee, under section 614, had jurisdiction of the debtor and all of the property in which he had an interest and had the power and authority to enjoin the prosecution of such reclamation petitions.

Similarly, the court in In re Duncan, 33 F.Supp. 997 (E.D.Va.1940), held that section 614 gave the Referee power to enjoin an action to repossess a refrigerator which was the security under a conditional sales contract where the credi-tor concerned had rejected the plan under Chapter XIII.

The claims of secured creditors who have rejected or refused to accept a proposed plan under the provisions of Chapter XIII, such as those involved in both the Clevenger and Duncan decisions, although the security is solely personal property, may not be dealt with or affected by such a plan, thus removing them from the compromising operation of the plan as effectively as if their claims had been excluded by definition, just as Penn Mutual is excluded from participation in the plan as the holder of a debt secured by real property. See In re Clevenger, supra; In re Copes, 206 F.Supp. 329 (D.Kan.1962); In re O'Dell, 198 F.Supp. 389 (D.Kan.1961); 11 U.S.C.A. § 1052. Thus, we are of the opinion that there is a clear analogy between the situation present in both the Clevenger and Duncan cases and that presented in the instant case.

■ The general purpose of Chapter XIII is to afford a means of relief and rehabilitation to persons dependent upon their earnings from personal services by providing a method for effecting a composition with creditors, or extension of time to pay debts, or both. Providing a means of relief and rehabilitation to debtors without adjudication as bankrupts is the common principal purpose of Chapters X, XI, XII and XIII of the Bankruptcy Act. Examination and comparison of the structures and specific provisions of these chapters reveal many similarities. See 9 Remington on Bankruptcy § 3747 (6th

---

5. 11 U.S.C.A. § 1011 provides as follows:
   "§ 1011. Exclusive jurisdiction of debtor, property, and earnings
   "Where not inconsistent with the provisions of this chapter, the court in which the petition is filed shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and his property, wherever located, and of his earnings and wages during the period of consummation of the plan." 52 Stat. 931 (1938).

6. 11 U.S.C.A. § 1014 provides:
   "§ 1014. Stay of actions
   "The court may, in addition to the relief provided by section 29 of this title and elsewhere under this chapter, enjoin or stay until final decree the commencement or continuation of suits other than suits to enforce liens upon the property of a debtor, and *may, upon notice and for cause shown, enjoin or stay until final decree any act or the commencement or continuation of any proceeding to enforce any lien upon the property of a debtor.*" 52 Stat. 931 (1938). (Emphasis supplied.)

ed. 1955). Except for recent amendments, the provisions of all four of these chapters were enacted simultaneously on June 22, 1938, in the Chandler Act. The primary differences between the chapters relate to the persons who may avail themselves of relief and the obligations which may be ultimately affected. See 8 Collier on Bankruptcy 2.06 (14th ed. 1941). Although these basic differences should be kept in mind, the parallel structure and common purposes of these four chapters should not be ignored or disregarded.

For example, by definition, Chapter XI of the Bankruptcy Act respecting "arrangements" with creditors excludes from its operation *all secured* claims or debts and all *secured* creditors. That chapter contains provisions respecting jurisdiction of the bankruptcy court over debtor's property (Sec. 311) and granting injunctions or stays of proceedings to enforce liens (Sec. 314). Those sections are identical to sections 611 and 614 of the Act respecting such matters under Chapter XIII proceedings. Notwithstanding the fact that Chapter XI pertains exclusively to *unsecured* debts,[7] it has been held repeatedly that the bankruptcy court, acting by and through the Referee, has the discretionary power to enjoin proceedings to foreclose deeds of trust or mortgage liens upon both real and personal property belonging to the debtor.[8] In addition to recognizing and giving effect to the plain provisions of the

statute granting the injunctive power, the rationale of such decisions is that the legislation is remedial in nature; it should be liberally construed to effect its purpose, i. e., relief to and rehabilitation of debtors; and it is quite apparent that in certain instances the power to enjoin foreclosure proceedings may properly be used to further that purpose. Although the provisions of Chapter XI are expressly declared to apply exclusively to proceedings thereunder, we are of the opinion that decisions pertinent to proceedings under Chapter XI (applicable only to *unsecured* creditors) may be helpful in the construction of Chapter XIII provisions respecting the jurisdiction and injunctive power of the bankruptcy court.

It is well settled that statutes which relate to the same persons or things, or the same class of persons or things, or have a common purpose may be regarded as in *"pari materia."* Furthermore, similar statutory provisions in *pari materia* should receive similar and harmonious construction. 50 Am. Jur., Statutes, §§ 348–351 (1944). In view of the similar language, the simultaneous enactment of these debtors' statutes by the same legislative body and the similar purposes to be served thereby, we hold that the statutes comprising Chapters X, XI, XII and XIII of the Bankruptcy Act are in *pari materia* and that the construction so uniformly given to sections 311 and 314 of Chapter XI should be equally appli-

---

**7.** Chapter XI provides relief to a "debtor," defined as any person who could become a bankrupt under section 22 of the Bankruptcy Act and who files a petition under that chapter, by means of an "arrangement" comparable to a wage earner's plan under Chapter XIII. See 11 U.S.C.A. § 706. "Debts" or "claims" are restricted to unsecured debts, demands or claims and "creditors" are the holders thereof. 11 U.S.C.A. § 707. However, the section of Chapter XI defining jurisdiction, 11 U.S. C.A. § 711, Section 311 of the Bankruptcy Act, and the section providing for the power to enjoin, 11 U.S.C.A. § 714, Section 314 of the Bankruptcy Act, are identical to the equivalent sections of Chapter XIII, 11 U.S.C.A. §§ 1011 and

1014, respectively (see footnotes 5 and 6). Many other provisions of Chapter XI are either identical to corresponding ones of Chapter XIII or substantially so.

**8.** Indiana Nat. Bank of Indianapolis v. Goss, 208 F.2d 619 (7th Cir., 1953); Wm. H. Wise & Co. v. Rand McNally & Company, 195 F.Supp. 621 (S.D.N.Y.1961); In re Tracy, 194 F.Supp. 293 (N.D.Cal. 1961); In re Atlantic Steel Products Corporation, 31 F.Supp. 408 (E.D.N.Y. 1939). See also 8 Collier on Bankruptcy paragraph 3.22 (14th ed. 1941); 9 Remington on Bankruptcy § 3579 (6th ed. 1955).

cable to sections 611 and 614 of Chapter XIII of the Act.[9]  Additionally, the legislative history of Chapters XI and XIII reveals that section 311 of Chapter XI and section 611 of Chapter XIII were derived from the same source,[10] and that section 314 of Chapter XI and section 614 of Chapter XIII were derived from the same source.[11]

■ Although the bankruptcy court conducting Chapter XIII proceedings has power upon notice and *for cause shown to enjoin or stay until final decree any action to enforce liens upon the property of the debtor,* the exercise of such power may be reviewed to determine whether there has been an abuse of discretion.  Bearing in mind the general purposes and provisions of Chapter XIII, it would appear that, in addition to usual equitable considerations, including debtor's good faith in submitting a plan and ability to perform it, at least three conditions should be met before this injunctive power may be exercised: (1) The injunction or stay must be necessary to preserve the debtor's estate or to carry out the Chapter XIII plan; (2) the granting of the injunction must not directly or indirectly impair the security of the lien; and (3) the owner of the secured indebtedness must not be required to accept less than the full periodic payments specified in his contract.

The protection of the debtor's equity of redemption was emphasized in the Garrett case where the debtor had a substantial equity in the mortgaged real estate.  The court explained as follows, 203 F.Supp. at 460–461:

"Certainly it is not the purpose of Chapter XIII, in excluding from a Wage Earner's Plan a creditor secured by real property, to permit such a creditor any special advantage over other creditors, except to the extent of his valid security.  Such a creditor has no reason to expect an opportunity to obtain for itself an asset of value greater than its debt.  While the security of such creditor must be duly honored, we do not construe the statute to require the sacrifice of any equity in real property above the amount of the mortgage debt.

\*   \*   \*   \*   \*   \*

"\*   \*   \*   It would seem clear that it would be improper to allow an asset of the estate to be dissipated by permitting a foreclosure during the pendency of a Chapter XIII proceeding, to the potential detriment of other creditors who may ultimately have an interest in that very asset if the case is converted to bankruptcy [as is provided for by sections 666–669 of the Bankruptcy Act, 11 U.S.C.A. §§ 1066–1069]."

The court also recognized condition (2) above by stating that its injunction against foreclosure would be limited to the period of pendency of the case, during which period nothing should be allowed to impair the security of the mortgagee.

The failure to provide for the full contract payments to a creditor whose debt was secured by personal property and who rejected a plan under Chapter XIII was the ground for reversal of an order denying reclamation of the security in In re Copes, 206 F.Supp. 329 (D.Kan.1962). Observing that such a plan made the secured creditor an involuntary partici-

9.  See 9 Collier on Bankruptcy, paragraphs 23.01 and 23.05 (14th ed. 1942) where the author points out the identical characteristics of the sections involved and indicates that his discussion of sections 311 and 314 applies equally to sections 611 and 614 with certain exceptions not material here.  See also 9 Remington on Bankruptcy § 3747 (6th ed. 1955) where it is noted generally that some of the provisions of Chapter XIII are identical with those of Chapters X, XI and XII of the Act and that such identity provides a useful aid in the construction of Chapter XIII provisions in view of the relative dearth of decisions construing Chapter XIII.

10.  11 U.S.C.A. § 202(m), enacted as former sections 74(m) 47 Stat. 1470 (1933), and 77B(a), 48 Stat. 912 (1934).

11.  11 U.S.C.A. § 202(n), enacted as former section 77B(c) (10) of the Bankruptcy Act, 48 Stat. 917 (1934).

pant in the plan, the court held that "a secured creditor who rejects a plan is entitled either to his contract benefits or the return of his security." Upon similar reasoning, the same court in In re O'Dell, 198 F.Supp. 389 (D.Kan.1961), reversed the order of a referee confirming a plan under Chapter XIII where the plan reduced monthly payments to a nonassenting creditor secured by personal property below the amounts specified in its contract with the debtor.

The court in In re Duncan, supra, 33 F. Supp. 997 (E.D.Va.1940), upheld a referee's order denying reclamation of a refrigerator on the basis of these factors: (a) The debtor had a substantial equity in the security; (b) the secured creditor had acquiesced in the default; and (c) the debtor's plan provided for resumption of payments to the secured creditor at the contract rate and the balance of the debt would be fully paid before the debtor would be entitled to a final decree. Noting that other chapters of the Bankruptcy Act are analogous to Chapter XIII, the court stated, 33 F.Supp. at 999:

> "If the court can, upon conditions reasonably certain to protect the mortgage creditor, stay the enforcement of a *mortgage upon a farm* for a period not exceeding three years [under former section 75(s) of the Bankruptcy Act], it is not apparent why it may not under the provisions of Chapter 13, stay the enforcement of a conditional sales contract for a modern household necessity such as a frigidaire for a shorter period upon a reasonable condition that the wage-earner shall regularly make his monthly payments in accordance with the contract until the balance due is paid, or if he fails to do so, the creditor may apply for a vacation of the stay and the enforcement of its rights under the contract." (Emphasis supplied.)

Similar decisions are found in cases involving questions as to the proper exercise of injunctive power under Chapter XI. In In re Tracy, 194 F.Supp. 293 (N.D.Cal.1961), where the holder of a second deed of trust on both the residence and place of business of a debtor sought to sell those properties following debtor's default and during pendency of proceedings under Chapter XI, the court reviewed the referee's stay of the sale of the two properties to determine whether it constituted an abuse of discretion. Debtor owned a substantial equity in the properties but it was pointed out that, if debtor's other assets were sufficient to pay his unsecured creditors and the sales of the two properties were therefore of no importance to such unsecured creditors, there could be an abuse of discretion in restraining the sale of said properties. With respect to the business property, the court held that facts could be found to support the referee's action in staying the sale since continuation of debtor's business on those premises could become essential to the completion of the Chapter XI proceedings. But restraining the sale of the residence in a town fourteen miles distant could not be similarly justified and, upon remand, the referee was instructed to reconsider his restraining order respecting this latter property. In In re Atlantic Steel Products Corporation, 31 F.Supp. 408 (E.D.N.Y.1939), the court approved the referee's denial, under Chapter XI, of leave to foreclose where the creditor was secured by a chattel mortgage on the debtor's plant and equipment and the proposed foreclosure would have rendered impossible the carrying out of the arrangement. While various distinctions can properly be made between the requirements under Chapter XI proceedings, such as the need to sustain the value of a "going business," and those under Chapter XIII, such as the preservation of the value of debtor's equity of redemption, it appears that under either chapter the protection of an arrangement or plan may similarly warrant use of the injunctive power to prevent a foreclosure.

Having concluded that there is statutory power to grant injunctive relief in the instant case, it is our further conclusion that the exercise of such power

**574**

lies within the sound, rather than the absolute, discretion of the referee and if such discretion has been abused the action of the referee in that regard should not be upheld. See In re Copes, 206 F. Supp. 329 (D.Kan.1962); In re Tracy, 194 F.Supp. 293 (N.D.Cal.1961). See also In re Laufer, 230 F.2d 866 (2d Cir., 1956). On this point we express no opinion. As was true as to one phase of In re Tracy, supra, the record presented here does not contain findings of fact upon which to base a determination that the Referee's discretion was or was not abused. The case will, therefore, be remanded to the District Court for such further proceedings, consistent with this opinion, as may be necessary to such determination.

Reversed and remanded.