**In re Jerry T. GOULARTE and Wife Sharon K. Goularte, Debtors.**

**Bankruptcy No. SA 79 BK 468/469.**

United States Bankruptcy Court,
W. D. Texas,
San Antonio Division.

Nov. 5, 1979.

Robert W. Satterfield, San Antonio, Tex., for debtor.

Claiborne B. Gregory, Jr., Gresham, Davis, Gregory, Worthy & Moore, San Antonio, Tex., for trustee.

Marion A. Olson, Jr., San Antonio, Tex., trustee.

## ORDER OF DISMISSAL

JOSEPH C. ELLIOTT, Bankruptcy Judge.

On this the 5th day of November, 1979, came on to be considered the Complaint Seeking Relief from Stay filed in the above styled and numbered cause.

After carefully considering the Complaint; the testimony adduced at the hearing; the statements of counsel and the entire file and record, the Court makes the following findings.

The Court finds the Debtors in this proceeding filed a petition in bankruptcy in Cause No. SA 79–BK 44 on January 19, 1979, and discharge was granted on April 3, 1979.

The Court finds that the Chapter XIII Petition in this case was filed on June 6, 1979, less than 64 days after the Debtor received a discharge in Cause Number SA 79–BK 44. The debts scheduled were not newly incurred after the debtors' April 3, 1979 discharge, but were the debts owed against property originally claimed as exempt and the only nondischargeable debts remaining after bankruptcy.

The Complaint alleges that the Debtors have failed to make payments to secured creditors for a period going back to December, 1978, and secured creditors have rejected the proposed Wage Earner Plan.

The Chapter XIII plan is intended to give the wage earner a reasonable opportunity to arrange installment payments to be made out of his future earnings, and provides a highly desirable method for dealing with the financial difficulties of individuals. It creates an equitable and feasible way for the honest and conscientious debtor to pay off his debts rather than having them discharged in bankruptcy. *Perry v. Commerce Loan Company*, 383 U.S. 392, 396, 86 S.Ct. 852, 855, 15 L.Ed.2d 827.

In the *Perry* case, *supra*, the Court held that a Debtor could properly file a Wage Earner Plan within six years of a discharge in bankruptcy, because the purpose of a Wage Earner Plan is to provide an honorable and equitable way of achieving financial rehabilitation. The case before this Court has gone far beyond the financial rehabilitation envisioned by *Perry, supra*. Under one Chapter of the Act he has discharged virtually all of his indebtedness. He then implements another Chapter to defer payment on those few remaining financial obligations. The evidence shows that the debtor, by virtue of the various statutory automatic stays, has had the unfettered use of two cars, and his home, without a single payment to creditors for an extended time. This Court cannot sanction or tolerate such a payment avoidance scheme under the guise of "financial rehabilitation." The Debtor has received a discharge in bankruptcy in a prior proceeding, and 64 days later with the threat of foreclosure and repossession looming on the horizon, he again appears before the Court seeking to stay his creditors from rightfully recovering exempt property the payments on which had become deliquent in the interim.

"The unmistakeable purpose of the six year provision of Section 14(c)(5) of the Bankruptcy Rules was to prevent the creation of a class of habitual bankrupts—debtors repeatedly escape their obligations as frequently as they chose by going through repeated bankruptcy." *Perry*, 383 U.S. 392, 399, 86 S.Ct. 852, 856, 15 L.Ed.2d 827.

The debtor has filed an extension plan under the provisions of Chapter XIII which stays any action of foreclosure which could be taken by creditors. A Wage Earner Plan may not be confirmed unless it has been accepted by all of the secured creditors whose claims are dealt with by the plan. *Terry v. Colonial Stores Employee's Credit Union of Atlanta*, 411 F.2d 553 (5th Cir. 1969.) The Fifth Circuit held in *Terry*, supra, that the plan could not be confirmed because the secured creditors were materially and adversely affected by the reduction in the monthly payment.

Payments under the instant plan, like *Terry*, would impair the creditors security by accumulating arrearages that could not be regained without undue delay mate-

rially and adversely affecting the security. The value continues to depreciate as the arrearages accumulate, and are compounded by delay. The plan filed in this instance causes undue delay and prejudice to the creditors to the extent they are materially and adversely affected thereby, and does not meet the requisite showing of good faith as required by the Bankruptcy Act. *See In the Matter of Cassidy*, 401 F.Supp. 757 (E.D.N.Y., 1975). In such an instance the Court must find that the delay and prejudice render the Plan unfeasible and that said Plan fails to meet the requisite good faith standard set forth in *Hallenbeck v. Penn Mutual Life Insurance Company*, 323 F.2d 566, 572 (4th Cir. 1963). *See also In re Pizzolato*, 281 F.Supp. 109, 110 (W.D. Ark.1967).

Therefore, it is the opinion of this Court that the plan is not feasible because the undue delay materially and adversely affects the secured creditors interest; the rehabilitative purposes of the Federal Wage Earner Plan are not met; and the filing of a Wage Earner Plan so closely upon the heels of bankruptcy allows the Debtor to purge himself of his unsecured debts while staying any action by the secured creditors.

Parenthetically, it should be noted that Section 1307 of the New Bankruptcy Act allows dismissal of a Plan for prejudice caused by undue delay created by the actions of the Debtor. This provision is similar to Sections 656 and 666 of the Bankruptcy Code, effective prior to October 1, 1979, and accordingly, the Plan is hereby DISMISSED.